# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

| | |
|---|---|
| DANA POTGIETER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    - against -<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>    Defendant | Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff Dana Potgieter ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. The Procter & Gamble Company ("Defendant") manufactures 2.72 liters of detergent marketed as sufficient for 64 loads of laundry under the Tide brand ("Product").

 

2. Though the number 64 grabs the purchaser's attention, a difficult-to-see white diamond follows the word "loads ◊."

3. Only if the container is turned around and the consumer navigates hundreds of words of varying size and fonts will they learn the amount of detergent is only sufficient for "◊[] approximately 64 loads as measured just below Bar 1 on cap."





4. This shows "just below Bar 1" corresponds to "Medium Loads," even though this is the smallest size listed, less than "large" (Bar 3) and "full" (Bar 5).

5. Consumers understand "loads" in the context of laundry to refer to full units, in the same way as other metric and imperial units of measurement, such as meters, liters, grams, feet, ounces and pounds.

6. This understanding was confirmed by the Department of Energy, which analyzed the direct relationship between capacity and maximum load by referencing how washing machine directions generally tell consumers to load them "to the point that the clothes container is loosely filled."

7. It determined that the term "full load" is widely understood by consumers, washing machine manufacturers and detergent companies as referring to a load size that takes advantage of the whole usable capacity of the clothes washer.

8. These facts are supported by "[U]npublished data from Procter & Gamble [which] indicate that North American households prefer large size loads (43%) over very large or medium loads (21% each)."[1]

9. California's utility companies conducted their own survey and concluded that 59 percent or 180 (of 310) laundry loads were either large or very

---

[1] Darius Sabaliunas et al., "Residential energy use and potential conservation through reduced laundering temperatures in the United States and Canada," Integrated Environmental Assessment and Management: An International Journal 2.2 (2006): 142-153; Jay Golden et al., "Energy and carbon impact from residential laundry in the United States," Journal of Integrative Environmental Sciences 7.1 (2010): 53-73.

large, more than twice as much as medium laundry loads.[2]

**Table 5: Relative Load Sizes**

| Load Size | Response Count (# loads reported) | Percentage of Total |
|---|---|---|
| Very small | 8 | 3% |
| Small | 34 | 11% |
| Medium | 88 | 28% |
| Large | 138 | 45% |
| Very Large | 42 | 14% |
| Total | 310 | 100% |

Source: PG&E 2016 Survey.

10. This California data is close to what Defendant discovered, that "Small and very small loads constitute less than 10% of total washes."

11. The tendency towards filling up a washing machine is not limited to the United States.

12. A 2011 study of over 2,000 Europeans found that roughly 70 percent used the full capacity of their washer, which increased to 74 percent by 2015.

13. Over the past decade, more consumers are doing larger loads of laundry, as they have become aware of the effects of energy consumption on climate change.

14. This is partly from media reports, like a CNN survey of laundry and environmental experts, who recommended Americans "save up [their] dirty clothes

---

[2] Comment, California Investor-Owned Utilities ("CA IOUs"), Energy Conservation Program: Test Procedures for Residential and Commercial Clothes Washers, 85 Fed. Reg. 38106 (proposed rule, June 25, 2020) (to be codified at 10 CFR Parts 430 and 431), Docket No. EERE-2016-BT-TP-0011.

and wash them in a few big loads versus several smaller loads" to mitigate their environmental impact.[3]

15. Most Americans who do "full" loads of laundry will only get half as many, or 32 loads from the bottle when run at high efficiency ("he").

16. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than approximately $10.99 for 92 oz (2.72 L), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

17. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

18. The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

19. Plaintiff is a citizen of Florida.

20. Defendant is a citizen of Ohio because it is an Ohio corporation with a principal place of business in Ohio.

21. The class of persons Plaintiff seeks to represent includes persons who

---

[3] Leah Kirts, How to wash laundry sustainably, according to experts, CNN Underscored, August 23, 2022.

5

are citizens of a different state from which Defendant is a citizen.

22. The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at thousands of grocery stores, big box stores, warehouse club stores, convenience stores, drug stores, bodegas and/or online within this State.

23. The Court has jurisdiction over Defendant because it transacts business within Florida and sells the Product to consumers within Florida from third parties such as thousands of grocery stores, big box stores, warehouse club stores, convenience stores, drug stores, bodegas and/or online.

24. Defendant transacts business in Florida, through the sale of the Product to citizens of Florida from third parties such as thousands of grocery stores, big box stores, warehouse club stores, convenience stores, drug stores, bodegas and/or online.

25. Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

26. Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial

revenue from the sale of the Product in this State.

27. Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

28. Venue is in this District with assignment to the Fort Lauderdale Division because a substantial part of the events or omissions giving rise to these claims occurred in Broward County, which is where Plaintiff's causes of action accrued.

29. Plaintiff purchased, used and/or consumed the Product in reliance on the labeling identified here in Broward County.

30. Plaintiff first became aware the labeling was false and misleading in Broward County.

31. Plaintiff resides in Broward County.

## PARTIES

32. Plaintiff Dana Potgieter is a citizen of Broward County, Florida.

33. Defendant The Procter & Gamble Company is an Ohio corporation with a principal place of business in Ohio.

34. Plaintiff purchased the Product between August 2019 and the present, at grocery stores, big box stores, warehouse club stores, convenience stores, drug stores, and/or bodegas in Broward County.

35. Plaintiff is like most consumers of detergent who look to the numbers on the front label to see how many loads of detergent they will be able to do from buying a particular product.

36. Plaintiff's laundry habits are like most Americans, because she waits until she has enough laundry to fill up most of her washing machine before doing a load of laundry.

37. The result is that the size of the loads of laundry she does is best described as "full" or "very large" and not "small."

38. Plaintiff read and relied on the number "64" on the front label, which she understood referred to the number of loads of laundry she would be able to do from the Product.

39. Plaintiff did not notice the diamond next to the word "loads" which referred to the back label, and significantly qualified the 64 loads.

40. Plaintiff did not receive enough detergent to wash 64 full size loads of laundry, which is what she expected.

41. Plaintiff did not expect 64 loads would mean 64 half or small loads or 32 full loads of laundry.

42. Plaintiff bought the Product at or exceeding the above-referenced price.

43. Plaintiff paid more for the Product than she would have had he known its claims about the number of loads of laundry it could be used for was false and misleading, as she would not have bought it or would have paid less.

44. The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

45. Plaintiff seeks to represent the following class:

> All persons in the State of Florida who purchased the Product in Florida during the statutes of limitations for each cause of action alleged.

46. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

47. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

48. Plaintiff is an adequate representative because her interests do not conflict with other members.

49. No individual inquiry is necessary since the focus is only on Defendant's

practices and the class is definable and ascertainable.

50. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

51. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
### Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*.

52. Plaintiff incorporates by reference paragraphs 1-36.

53. Plaintiff believed the Product could be used for 64 loads of laundry that were reasonably described as large or full loads.

54. Plaintiff paid more for the Product, would not have purchased it or paid as much if she knew that 64 loads meant 64 half or small loads or 32 full loads of laundry.

55. Plaintiff seeks to recover for economic injury and/or loss she sustained based on the misleading labeling and packaging of the Product, a deceptive practice under this State's consumer protection laws, by paying more for it than she otherwise would have.

56. Plaintiff will produce evidence showing how she and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's

representations, using statistical and economic analyses, hedonic regression, and other advanced methodologies.

57. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

## COUNT II
### False and Misleading Adverting, Fla. Stat. § 817.41

58. Plaintiff incorporates by reference paragraphs 1-36.

59. Defendant made misrepresentations and omissions of material fact, that the Product could be used for 64 loads of laundry that were reasonably described as large or full loads even though this meant 64 half or small loads or 32 full loads of laundry, through its advertisements and marketing in various forms of media, product packaging and descriptions, and targeted digital advertising.

60. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

61. Plaintiff paid more for the Product, would not have purchased it or paid as much if she knew that 64 loads meant 64 half or small loads or 32 full loads of laundry.

62. Defendant knew these statements and omissions were false and/or misleading.

63. Defendant intended for consumers to rely on its false statements and

omissions for the purpose of selling the Product.

64. Plaintiff and class members did in fact rely upon these statements.

65. Reliance was reasonable and justified because of Tide's reputation as a household name, honestly marketed to consumers.

66. As a result of Defendant's misrepresentations, Plaintiff and class members suffered damages in the amount paid for the Product and the premium amount paid.

## COUNT III
### Breach of Express Warranty

67. Plaintiff incorporates by reference paragraphs 1-36.

68. The Product was manufactured, identified, marketed, and sold by Defendant and expressly warranted to Plaintiff and class members that it could be used for 64 loads of laundry that were reasonably described as large or full loads even though this meant 64 half or small loads or 32 full loads of laundry.

69. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and/or targeted digital advertising.

70. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as detergent that could be used to do a relatively high number of loads of laundry relative to the container size and developed its marketing and labeling to directly meet those needs and desires.

71. Defendant's representations affirmed and promised that the Product could be used for 64 loads of laundry that were reasonably described as large or full loads even though this meant 64 half or small loads or 32 full loads of laundry.

72. Defendant described the Product so Plaintiff and consumers believed it could be used for 64 loads of laundry that were reasonably described as large or full loads even though this meant 64 half or small loads or 32 full loads of laundry, which became part of the basis of the bargain that it would conform to its affirmations and promises.

73. Plaintiff recently became aware of Defendant's breach of the Product's express warranty.

74. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and/or their employees.

75. Plaintiff hereby provides notice to Defendant that it breached the Product's express warranty.

76. Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

77. The Product did not conform to its affirmations of fact and promises due to Defendant's actions, because 64 loads meant 64 half or small loads or 32 full loads of laundry.

78. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT IV
Fraud

79. Plaintiff incorporates by reference paragraphs 1-36.

80. Plaintiff satisfied the requirements of fraud by establishing relevant elements with sufficient particularity.

81. WHO: Defendant, Procter & Gamble, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product by representing it could be used for 64 loads of laundry that were reasonably described as large or full loads even though this meant 64 half or small loads or 32 full loads of laundry.

82. WHAT: Defendant's conduct was and continues to be fraudulent because it deceives consumers into believing the Product could be used for 64 loads of laundry that were reasonably described as large or full loads even though this meant 64 half or small loads or 32 full loads of laundry.

83. Defendant omitted telling consumers the Product could not be used for 64 loads of laundry that were reasonably described as large or full loads.

84. Defendant knew or should have known this information was material to all reasonable consumers and impacts their purchasing decisions.

85. Defendant conducts research on consumer laundry habits and knew most

consumers did full or large loads of laundry, and that the number of loads a detergent was advertised to do is a significant factor in their purchasing decisions.

86. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

87. Yet, Defendant has represented and/or continues to represent that the Product could be used for 64 loads of laundry that were reasonably described as large or full loads even though this meant 64 half or small loads or 32 full loads of laundry.

88. WHEN: Defendant made these material misrepresentations and/or omissions detailed herein, continuously throughout the applicable class period and through the filing of this Complaint.

89. WHERE: Defendant's material misrepresentations and omissions, that the Product could be used for 64 loads of laundry that were reasonably described as large or full loads even though this meant 64 half or small loads or 32 full loads of laundry, were made in the advertising and marketing of the Product, on the front of the packaging, which all consumers buying would inevitably see and take notice of.

90. HOW: Defendant made written and visual misrepresentations and omissions in the advertising and marketing of the Product, that it could be used for 64 loads of laundry that were reasonably described as large or full loads even though this meant 64 half or small loads or 32 full loads of laundry.

91. And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions before purchasing the Product.

92. WHY: Defendant misrepresented that the Product could be used for 64 loads of laundry that were reasonably described as large or full loads even though this meant 64 half or small loads or 32 full loads of laundry, for the express purpose of inducing Plaintiff and class members to purchase the Product at a substantial price premium, in part based on consumer demand for value when purchasing detergent.

93. As such, Defendant profited by selling the misrepresented Product to thousands of consumers throughout this State.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Awarding monetary damages and interest;
3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
4. Other and further relief as the Court deems just and proper.

Dated:   September 11, 2023

                                      Respectfully submitted,

/s/ William Wright
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

William Wright

The Wright Law Office, P.A.

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Counsel for Plaintiff*
**Pro Hac Vice* Application Forthcoming